GRAVOIS, J.,
DISSENTS WITH REASONS
|¶1 respectfully dissent from the majority’s opinion to affirm the .trial court’s June 2, 2016 partial final judgment that denied the motion for summary judgment filed by Liberty Mutual Insurance Company (“Liberty Mutual”) and granted the motion for summary judgment filed by Progressive Security Insurance Company (“Progressive”) and Krystal Himel Hutzler. Rather, for the following reasons, I would reverse both the trial court’s denial of Liberty Mutual’s motion for summary judgment and its grant of summary judgment in favor of Progressive and Ms. Hutzler. Further, because in my opinion it has been shown that there is no genuine issue as to material fact and that Liberty Mutual is *1168 entitled to judgment as a matter of law, I would also render judgment granting Liberty Mutual’s motion for summary judgment, finding that there is no coverage available under the Liberty Mutual policy for Progressive and Ms. Hutzler’s claims for indemnity and contribution, and would accordingly dismiss this matter with prejudice as to Liberty Mutual, at appellees’ costs.
As noted in the majority opinion, at issue before this Court is whether Ms. Hutzler’s undisputed verbal cancellation of her Liberty Mutual policy was sufficient to effect cancellation of the policy. Upon review, I respectfully acknowledge this Court’s interpretation of La. R.S. 22:637 (now La. R.S. 22:885) in Gandy,[7] as well as the contrasting interpretation of La. R.S. 22:885 by the First Circuit in Erdey[8] However, after due consideration and analysis of the facts and circumstances involved in Gandy, Erdey, and the present case, along with the pertinent language of La. R.S. 22:885, I agree with the First Circuit’s reasoning in Erdey that because permissive language is used in the statute, the legislature 12intended for an insured to be able to cancel his or her policy in a manner other than those provided for in the statute, ie., other than in writing or surrender of the policy. Just as the First Circuit found in Erdey, I would find that if the legislature had intended for it to be mandatory that cancellation by the insured occur only by written notice or surrender of the policy, the legislature could have used “shall” or some other definitive directive in the statute, rather than “may.” Corresponding statutes regarding cancellation by the insurer—specifically both La. R.S. 22:887[9] and La. R.S. 22:888[10] “—require mandatory compliance with the procedures set forth in the statute by using the phrase “only upon compliance with.” Such a phrase is noticeably absent from La. R.S. 22:885.
Further, importantly in my opinion, the Liberty Mutual policy in question also contains permissive language and would thus allow for cancellation by means other than in writing or surrender of the policy.[11]
Also, in my opinion, the purpose of La. R.S. 22:885(A) is, in instances wherein the policy does not exclude a verbal cancellation at the insured’s option (as in the present case), to provide a method of effecting cancellation which is certain and indisputa *1169 ble. If the insurer accepts the verbal cancellation, and refunds or stops collecting the balance of the premium—as was done in the present case—11 asee no reason that the cancellation should not be effective, provided the policy does not exclude a verbal cancellation. This interpretation does not render La. R.S. 22:885(A) meaningless or unnecessary. Rather, if the insurer declines the requested cancellation, or requires a more onerous method of cancellation, the insured may, with certainty, cancel according to the method provided by La. R.S. 22:885(A).
Finally, in my opinion, the interpretation of La. R.S. 22:637 (now La. R.S. 22:885) by this Court in Gandy, as applied to the particular facts and circumstances of the present case, does not serve justice in the present case. In the present case, it is undisputed that on July 10, 2012—a full three weeks prior to Ms. Hutzler’s July 31, 2012 accident—Ms. Hutzler called Liberty Mutual and requested cancellation of her policy. From the record, it is clear that Liberty Mutual accepted this request for cancellation, backdated the cancellation at Ms. Hutzler’s request to June 25, 2012, and sent her a bill only for the prorated amount of her premium through the date of cancellation, noting on the bill that it had cancelled her policy per her request. Ms. Hutzler paid the prorated amount of her premium shortly after the bill was sent by Liberty Mutual to a collection agency. The facts are thus clear that the policy was cancelled by mutual agreement of Ms. Hutzler and Liberty Mutual. No evidence was presented that Ms. Hutzler was presented with any bill from Liberty Mutual for policy coverage at the time of the subject accident. Nor was any evidence presented that Liberty Mutual received any premium from Ms. Hutzler for coverage on her subject vehicle as of the time of the subject accident. Also, Progressive has readily admitted that it provided coverage for Ms. Hutzler’s subject vehicle involved in the subject accident effective from its policy inception date .of June 25, 2012 through the time of the subject accident. It is not appropriate, in my opinion, for Liberty Mutual to be cast in judgment and accordingly be held responsible for having to make payments to Ms. Hutzler Land/or Progressive under a policy that was undis-putedly verbally cancelled by Ms. Hutzler a full three weeks prior to the subject accident and for which Liberty Mutual un-disputedly received no premiums for coverage on her subject vehicle as of the time of the subject accident.
Accordingly, for the foregoing reasons, I respectfully dissent.
WINDHORST, J., DISSENTS
hi have considered the opinion of the majority, and I respectfully dissent for the reasons set forth by Judge Gravois.

. Gandy v. United Services Automobile Association, 721 So.2d 34 (La. App. 5th Cir. 1998), writ denied, 98-2836 (La. 1/15/99), 736 So.2d 208.

. Erdey v. Progressive Sec. Ins. Co., 09-1115 (La. App. 1 Cir. 12/23/09), 31 So.3d 417, writ denied, 10-0123 (La. 4/5/10), 31 So.3d 364.

. La. R.S. 22:887 provides, in pertinent part:
A. Cancellation by the insurer of any policy which by its terms may be can-celled at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either of the following: ... (Emphasis added.)

. La. R.S. 22:888 provides, in pertinent part:
[[Image here]]
B. Cancellation under this Section by the insurer of any policy or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following: ... (Emphasis added.)

.Particularly, the Liberty Mutual policy contains the following pertinent language regarding cancellation by the named insured, to-wit:
A. Cancellation. This policy may be can-celled during the policy period as follows:
1. The named insured shown in the Declarations may cancel by:
a. returning this policy to us; or
b. giving us advance written notice of the date cancellation is to take effect.
(Emphasis through italics added.)